UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MIANELA INGRID CHANCO SERRANO,

Petitioner,

v.

CHRISTOPHER CHESTNUT, Warden, California City Corrections Center, et al.

Respondents.

No.  1:25-cv-01723-EFB

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS;

ORDER FOR IMMEDIATE RELEASE FROM DETENTION FACILITY

Petitioner Mianela Ingrid Chanco Serrano, represented by counsel, is a noncitizen seeking habeas corpus relief pursuant to 28 U.S.C. § 2241.  ECF No. 1.  On December 22, 2025, respondents filed an opposition to the petition (ECF No. 10) and on December 29, 2025, petitioner filed a traverse.  ECF No. 12.  For the reasons set forth herein, the petition for writ of habeas corpus is GRANTED.

**I.      Background and Procedural History**

Petitioner is a native and citizen of Peru.  ECF No. 1 at 5; ECF No. 11 at 2.  Petitioner entered the country in June 2021.  *Id.*  Petitioner was subject to removal proceedings in immigration court, and she presented an asylum claim, which was denied on or about June 5, 2025.  Petitioner filed an appeal with the Board of Immigration Appeals around June 19, 2025.  ECF No. 1; Ex. A.  Petitioner attended all scheduled hearings while in removal proceedings and has no criminal record.  *Id.* at 6.

Petitioner was subsequently ordered by ICE to present herself at the ISAP facility in Bakersfield, California, to sign documents.  *Id.* at 5. When she did, she was arrested and taken

1

into custody at the California City Corrections Center. *Id.* at 6. Petitioner was not offered any process or opportunity to be heard prior to her arrest and detention. *Id.* Petitioner has five children, including one who is a United States citizen. *Id.* Petitioner alleges that while she has been in detention, her medical needs have been ignored, she has not been provided with her prescribed medication, and she has not been allowed to see a doctor for a swollen and discolored breast, likely due to mastitis diagnosed before she was detained. *Id.* at 6-7.

Petitioner filed her petition for writ of habeas corpus on December 2, 2025. ECF No. 1. In her petition, petitioner alleges three grounds for relief. In her first claim, she alleges that her arrest and detention without due process or an opportunity to be heard violates the laws and Constitution of the United States, entitling her to a writ of habeas corpus, because respondents have made no finding that this case involves rebellion or invasion of public safety, and because petitioner has followed all immigration orders, including attending hearings, and complying with ICE check-ins. ECF No. 1 at 11. In her second claim, petitioner alleges that her detention violates the Administrative Procedures Act (APA), 5 U.S.C. § 706(a), because her arrest and detention while her asylum appeal is being adjudicated is arbitrary, capricious, and an abuse of discretion. *Id*. at 11-12. Finally, in her third claim, petitioner alleges that she is being held in violation of her Fifth Amendment right to Due Process. *Id.* at 12-14; *see Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

**II.        Discussion**

The federal court should grant a writ of habeas corpus under 28 U.S.C. § 2241 when the petitioner is in custody in violation of the Constitution or federal law. *See, e.g., Dominguez v. Kernan*, 906 F.3d 1127, 1134 (9th Cir. 2018). The petitioner bears the burden to prove the unlawfulness of her detention by a preponderance of evidence. *Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 911 (W.D. Wash. 2025).

Respondents do not contest any of the facts addressed *supra* and aver that the petition presents "a mere question of law that is well-known to the court." ECF No. 10 at 1. Respondents' sole argument in opposition to the petition is a statutory one that petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Specifically, respondents argue

that petitioner meets the definition codified in section 1225(a), of an "an applicant for admission", as she is an alien "who 'is present' in the United States but 'has not been admitted' to the United States," thereby, according to respondents, subjecting her to the mandatory detention provisions of section 1225(b)(2)(A).  ECF No. 10 at 3.

Respondents are incorrect.  Respondents do not dispute that petitioner was "previously released at the discretion of DHS," but maintain that even if her "release document cited 8 U.S.C. § 1226," she should be mandatorily detained pursuant to section 1225(b)(2)(A).  ECF No. 10 at 3.  Section 1226 "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal."  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citation omitted).  Section 1226(a) "sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of a[] [noncitizen] 'pending a decision on whether the [noncitizen] is to be removed from the United States'" and  "'may release' a[] [noncitizen] detained under § 1226(a) 'on . . . bond' or 'conditional parole,'" except as provided under section 1226(c).  *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting 8 U.S.C. § 1226(a)); *see also Thuraissigiam*, 591 U.S. at 108.   Respondents do not argue that the exceptions of section 1226(c) are implicated here.  *See* ECF No. 10.

Once a noncitizen is conditionally released or paroled under section 1226(a), the statute and regulations guarantee her certain protections before she is re-detained or removed.  The Ninth Circuit has summarized,

> Under § 1226(a) and its implementing regulations, a detainee may request a bond hearing before an IJ at any time before a removal order becomes final. *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19.  If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the IJ will order his release. *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006); *see also Matter of Barreiros*, 10 I. & N. Dec. 536, 537–38 (B.I.A. 1964).  The IJ considers various factors in making this determination, including the individual's ties to the United States as well as his employment history, criminal record, history of immigration violations, and manner of entry into this country. *Matter of Guerra*, 24 I. & N. Dec. at 40. The IJ also decides whether bond or other conditions on the alien's release are appropriate. *Id.*; *see* 8 U.S.C. § 1226(a)(2).  The detainee may be represented by counsel and can submit evidence in support of his claims. *See* 8 C.F.R. § 1003.19(b); *Matter of Fatahi*, 26 I. & N. Dec. 791, 792 (B.I.A. 2016).  He can also appeal an adverse decision to the BIA. *See* 8 C.F.R. § 236.1(d)(3).

3

> On top of this, an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances. *See* 8 C.F.R. § 1003.19(e). The same procedures apply to this new hearing, and its outcome is also appealable to the BIA. *See generally id.* § 1003.19.

*Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citation omitted).

Respondents assert that none of these provisions apply to petitioner, notwithstanding her release pursuant to section 1226.  Per respondents, the Government is required to detain petitioner pursuant to section 1225(b)(2)(A).  Section 1225(b) reflects a specific "supplement [to] § 1226's detention scheme." *Rodriguez Diaz*, 53 F.4th at 1197.  It "applies primarily to [noncitizens] seeking entry into the United States ('applicants for admission' in the language of the statute)." *Jennings*, 583 U.S. at 297; *see* 8 U.S.C. § 1225(b) ("Inspection of applicants for admission"). Under this section, an "applicant for admission" is defined as "[a] . . . [noncitizen] present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1); *see Jennings*, 583 U.S. at 287.  Under section 1225(b)(2)(A), ICE is required to detain certain aliens "if the examining immigration officer determines that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted."  8 U.S.C. § 1225(b)(2)(A); *see Rodriguez Diaz*, 53 F.4th at 1197.

Respondent's position is unpersuasive.  As numerous courts have held, section 1225(b) cannot apply to those noncitizens who are already present in the United States and who had previously been released under section 1226.  *See generally Menjivar Sanchez v. Wofford*, No. 1:25-CV-01187-SKO (HC), 2025 WL 2959274, at *3-7 (E.D. Cal. Oct. 17, 2025) (collecting cases); *see also Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1258-61 (W.D. Wash. 2025); *Reyes v. Larose, et al.*, No. 25-CV-2938 JLS (VET), 2025 WL 3171743, at *5 (S.D. Cal. Nov. 13, 2025); *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4-9 (E.D. Cal. Sept. 23, 2025): *Salvador v. Bondi*, No. 2:25-CV-07946-MRA-MAA, 2025 WL 2995055, at *7 (C.D. Cal. Sept. 2, 2025); *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299, at *5-7 (D. Mass. July 7, 2025).  This court adopts the cogent, detailed statutory analyses set forth in *Menjivar Sanchez v. Wofford*, No. 1:25-CV-01187-SKO (HC), 2025 WL 2959274, at *3-7 (E.D.

Cal. Oct. 17, 2025); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1258-61 (W.D. Wash. 2025)[1]; and *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4-9 (E.D. Cal. Sept. 23, 2025).

Furthermore, respondents acknowledge, as they must, that the relevant caselaw does not support their position that petitioner is subject to detention pursuant to section 1225(b)(2)(A). ECF No. 10 at 3. Despite their argument that the statute mandates petitioner's detention, respondents do not cite to a single case that would support such an interpretation of the statute. In fact, the only cases cited by respondents are cases that they admit hold that section 1226 (and not section 1225(b)(2)(A)) are applicable to aliens such as petitioner. *See Ortiz Donis v. Chestnut*, 2025 WL 3268507 (E.D. Cal. Nov. 24, 2025) *,* 2025 WL 3268507 (E.D. Cal. Nov. 24, 2025) (holding section 1225(b)(2)(A) inapplicable to aliens living for years in the United States and ordering petitioner's immediate release); *Dominguez v. Noem*, 2025 WL 3268507 (E.D. Cal. Nov. 24, 2025) (finding section 1226 applicable to petitioners detained pending removal proceedings).

In short, respondents' urged interpretation of section 1225(b) is untenable under principles of statutory construction because it "would render superfluous provisions of Section 1226 that apply to certain categories of inadmissible noncitizens," *Rodriguez*, 779 F. Supp. 3d at 1258-59; *see also Gomes*, 2025 WL 1869299, at *7, and because it creates irreconcilable contradictions in the statutory scheme as a whole. *See Salcedo Aceros*, 2025 WL 2637503, at *8. Respondents' interpretation also conflicts with the legislative history of 8 U.S.C. § 1226, *Rodriguez*, 779 F. Supp. 3d at 1260, and the longstanding practices of the Department of Homeland Security, which "inform[s]" the courts' understanding of the law. *Id*. at 1260-61 (*quoting Loper-Bright Enter. v. Raimondo*, 603 U.S. 369, 386 (2024)); *see also Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *4 (N.D. Cal. Sept. 12, 2025). For these reasons, the court finds that petitioner is entitled to habeas corpus relief.

////

---

[1] Respondents note that this case is on appeal to the Ninth Circuit, and requests that "any further briefing deadlines be held [sic] abeyance until the resolution of the *Rodriguez* case." ECF No. 10 at 3. Because the court is granting the petition, and no further briefing is required, respondents' request is denied as moot.

Respondents do not address petitioner's due process and constitutional claims in any way. ECF No. 10.  By failing to do so, the court finds that respondents concede the merits of petitioner's due process and constitutional claims.  Nonetheless, in the interests of thoroughness, the court will address these claims.

To determine whether civil detention violates a detainee's Fifth Amendment procedural due process rights, courts apply the three-part test articulated in *Mathews v. Eldridge. See* 424 U.S. 319, 335 (1976).  Under *Mathews*, courts weigh three factors: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.; see also Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) ("We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State, . . . the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient").  The *Mathews* test applies in cases where a petitioner raises a due process challenge to his immigration detention.  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

Respondents do not dispute that petitioner possesses a liberty interest to which due process rights attach.  A protected liberty interest may arise from a conditional release from physical restraint.  *Young v. Harper*, 520 U.S. 143, 147-49 (1997).  Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute.  *See id*. (Due Process requires pre-deprivation hearing before revocation of pre-parole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context).  To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*."  *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010)

(internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a parolee possesses a protected liberty interest in her "continued liberty." *Id.* at 481-84.

Petitioner's release is similar. Petitioner has presented evidence that, since her release, she has created and maintained deep ties to her community, including giving birth to a son who is a United States citizen and for whom she is the main caretaker. ECF No. 1 at 6-7; Ex. B. In addition, petitioner has documented medical needs that are not being treated in detention. *Id.*; Ex. C. When petitioner was previously released, this reflected a determination that she did not pose a flight risk or danger to the community, *see Saravia*, 280 F. Supp. 3d at 1176; 8 C.F.R. § 1236.1(c)(8), and respondent does not dispute that petitioner presently remains neither a flight risk nor danger to the community. In all material respects, therefore, petitioner's liberty interest resembles that of the plaintiff in *Morrissey*. *See Morrissey*, 408 U.S. at 482; *but see Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (observing that, "[g]iven the civil context [of the immigration proceeding], [the noncitizen detainee's] liberty interest is arguably greater than the interest of parolees in *Morrissey*").

Accordingly, the court finds that, pursuant to *Morrissey* and its progeny, petitioner does have a liberty interest in her release, implicating her rights under the Constitution's Due Process clause. *See, e.g.*, *Ortega*, 415 F. Supp. 3d at 970 (reaching the same conclusion for a paroled noncitizen); *Reyes v. Larose, et al.*, No. 25-CV-2938 JLS (VET), 2025 WL 3171743, at *5 (S.D. Cal. Nov. 13, 2025) (same); *Rodriguez Rodriguez v. Kaiser*, No. 1:25-cv-01111-KES-SAB, 2025

WL 2855193, at *5-6 (E.D. Cal. Sept. 4, 2025) (same); *Arzate v. Andrews*, No. 1:25-cv-00942-KES-SKO, 2025 WL 2230521, at *4 (E.D. Cal. Aug. 4, 2025) (same); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest).

Petitioner has also demonstrated her entitlement to a bond hearing. Without a bond hearing, "the risk of erroneous deprivation" through petitioner's summary detention is also considerable. *Mathews*, 424 U.S. at 335. Detention is justified when an alien poses a flight risk or a danger to the community. *See Zadvydas*, 533 U.S. at 690. There is nothing in the record indicating that either circumstance is present here, and respondents do not maintain that petitioner is either a flight risk or a community danger. ECF No. 10. Without any procedural safeguards to determine whether petitioner's detention was justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *4 (E.D. Cal. Sept. 9, 2025) (internal quotation and citation omitted).

Furthermore, respondents' interest in petitioner's detention is low. *See Ortega*, 415 F. Supp. 3d at 970. "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez*, 872 F.3d at 994. The effort and cost required to provide petitioner with procedural safeguards are minimal. *See Lopez*, 2025 WL 3124116, at *4; *Khan v. Noem, et al.*, No. 1:25-CV-01411-EPG-HC, 2025 WL 3089352, at *7 (E.D. Cal. Nov. 5, 2025) ("In immigration court, custody hearings are routine and impose a 'minimal' cost." (citations omitted)). In addition, respondents do not dispute that petitioner has attended all scheduled hearings while in removal proceedings. ECF No. 1 at 6-7; ECF No. 10.

////

////

Thus, having found that petitioner has a liberty interest and that she is entitled to a bond hearing before a neutral arbiter at which the justification for any detention is proven by the Government, the court finds that petitioner is also entitled to her requested habeas relief on the merits of her constitutional arguments.

## CONCLUSION

Accordingly, for the reasons stated herein, the Court HEREBY ORDERS that:

1. The petition for writ of habeas corpus (ECF No. 1) is GRANTED.

2. Respondents are ORDERED to immediately release petitioner from custody on her own recognizance.

3. The parties shall file a joint status report within seven days of the date of this order confirming that petitioner has been released from custody.

4. Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner without a pre-deprivation bond hearing before a neutral adjudicator, who possesses authority to order release, at which the Government must prove by clear and convincing evidence that petitioner is a flight risk or danger to the community such that her physical custody is required.

5. Upon receipt of the joint status report confirming petitioner's release from custody, the Clerk is directed to enter judgment and close this case.

6. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated:  February 9, 2026

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

9